UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

THE ROBERT PLAN OF NEW YORK CORP.,

                              Debtor.
----------------------------------------------------------------x
KENNETH KIRSCHENBAUM,
as chapter 7 Trustee of the estate of
THE ROBERT PLAN OF NEW YORK CORP.,

                          Plaintiff,

v.

LEEDS MORELLI & BROWN P.C. and
NANCY ISSERLIS,

                          Defendants.
----------------------------------------------------------------x

Case No. 808-74575-reg

Chapter 7

Adv. Proc. No. 810-8157-reg

## DECISION AFTER TRIAL

Before the Court is an adversary proceeding commenced by Kenneth Kirschenbaum (the "Trustee" or "Plaintiff"), the chapter 7 trustee of the debtor, The Robert Plan of New York Corp. (the "RPNY"), seeking to avoid and recover transfers from the Debtor to the defendants, Leeds Morelli & Brown P.C. ("LMB") and Nancy Isserlis ("Isserlis") pursuant to 11 U.S.C. §§ 547(b) and 550.[1]  In the complaint, dated April 21, 2010 ("Complaint"), the Trustee alleges that an affiliated debtor, The Robert Plan Corporation ("RPC") made two transfers totaling $110,000 to the defendants that are avoidable preferences (the "Transfers").  (Together, RPNY and RPC,

---

[1]      The complaint also asserted constructive fraudulent conveyance claims under 11 U.S.C. §548(a)(1)(B) and New York Debtor and Creditor Law §§ 273 and 274.  However, those claims were not address in pre-trial or post-trial briefs filed by the Trustee, and at the commencement of trial counsel for LMB represented to the Court that the fraudulent conveyance claims were waived, and the Trustee did not contradict that representation.  *See* Dec. 16, 2010 Tr. at 15.

which have been substantively consolidated, are referred to herein as the "Debtors").  The Transfers were payments by the Debtors made pursuant to a pre-bankruptcy settlement, and resulting judgment, in a tort action by Isserlis, represented by LMB, against the Debtors.  The Trustee further contends that the Transfers are recoverable from both defendants as either initial or subsequent transferees of the subject funds.

Prior to trial, the Trustee entered into a settlement agreement with Isserlis pursuant to which Isserlis agreed to pay the Trustee $70,000 in settlement of his claims against her.  The settlement subsequently was approved by the Court.  The settlement with Isserlis specifically provided that it would not affect the Trustee's claims against LMB.

A trial was conducted on December 16, 2010 against LMB only.  Resolution of the claims against LMB requires a two-step analysis which necessarily involves a discussion of Isserlis's role in the transactions, despite the fact that the claims against her have been settled. First, the Trustee must prove that the Transfers are avoidable under section 547 by proving that the elements of section 547 have been met.  Second, the Trustee must prove that he is entitled to recover the value of those Transfers from LMB pursuant to section 550.

At trial, the Trustee relied upon the documentary evidence to prove his case-in-chief, and called a single witness in rebuttal to testify as to the Debtors' insolvency on the date of the Transfers.  The defendant, LMB, called one witness, Jefferey K. Brown, a partner at LMB.  The Trustee's exhibits 1-15 were admitted into evidence, and LMB's exhibits 1-20 were admitted into evidence without objection.

On January 31, 2011, both the Trustee and LMB filed post-trial briefs, findings of facts, and conclusions of law.  On February 15, 2011, the parties submitted their final post-trial briefs.

For the reasons that follow, the Court finds that the Transfers, although avoidable

preferences under section 547 of the Bankruptcy Code, cannot be recovered from LMB under

section 550 because LMB was not an initial transferee of the Transfers, but rather was a

subsequent transferee who took the transfers in good faith and for value and without knowledge

of the avoidability of the Transfers.

### *Jurisdiction*

This adversary proceeding is a core proceeding and this Court has jurisdiction over this

matter pursuant to 11 U.S.C. §§157(b) and 1334(b).  The following constitutes the Court's

findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

### *Facts*

On or about April 18, 2005, Nancy Isserlis ("Isserlis") retained the law firm of Leeds

Morelli & Brown P.C. ("LMB") to represent her in an employment discrimination suit against

her former employer, The Robert Plan of New York Corporation ("RPNY").  Isserlis and LMB

entered into a retainer agreement pursuant to which Isserlis agreed to pay LMB an initial retainer

of $7,000, an additional retainer deposit, plus a 30% contingency fee equal to the total amount

recovered from RPNY in the discrimination suit.  Shortly after signing the retainer agreement,

Isserlis tendered a check to LMB for $7,000.

On June 21, 2007, LMB, on behalf of Isserlis, executed a settlement agreement with RPC

("Settlement Agreement"), pursuant to which RPC agreed to pay Isserlis $500,000 as follows:

$150,000 on or before June 30, 2007, and $350,000 on or before November 30, 2007.  The

Settlement Agreement provided that payments due to Isserlis would be distributed so that Isserlis

received 70% of the gross payments and "30% of each payment will be paid *directly* by check to

[LMB]. . . as *attorney's fees*." (Settlement Agreement at 1(emphasis added)). Isserlis, Jeffrey Brown, a partner at LMB, and Robert Wallach, CEO of RPC, all signed the Settlement Agreement.

RPC failed to make any payment under the Settlement Agreement. RPC's default caused Isserlis to commence an arbitration proceeding against RPC which resulted in an arbitration award in her favor. Isserlis later filed a state court action against RPC to confirm the arbitration award ("State Court Action"). On January 25, 2008, the parties signed a stipulation that was "so ordered" by the state court ("Stipulation"). The Stipulation provided for RPC to pay Isserlis $650,000 which included all amounts due under the Settlement Agreement including penalties. RPC was to pay Isserlis in four installments from March 30, 2008 to June 15, 2008. The Stipulation left unchanged the remaining provisions of the Settlement Agreement and provided that RPC would not "appeal, challenge, move and/or petition to void, delay, stay, restrain and or vacate: i) the [Settlement Agreement] entered into by the parties, ii) the performance of said agreement . . . ." (Stipulation at 2-3). As part of the Stipulation the state court entered a judgment on February 21, 2008 (the "Judgment") in favor of Isserlis in the amount of $650,000.

On July 18, 2008, RPNY delivered a check to "LMB as attys" in the amount of $80,000 in partial satisfaction of the Judgment. LMB deposited the $80,000 into an escrow account separate from its operating accounts. On July 23, 2008, LMB issued a check to Isserlis for $56,000, representing 70% of the $80,000 payment. The word "settlement" was typed on the MEMO line of the check from LMB to Isserlis and the check was delivered to Isserlis. On the same day, LMB issued a check from its escrow account to its operating account for $24,000 representing LMB's 30% share of the $80,000 payment. The words "N. Issleris Settlement" were typed in the MEMO line of the check.

Two weeks later, on August 4, 2008, LMB's bank received a wire from RPNY in the sum of $30,000. LMB directed the money be deposited in its escrow account. On that day LMB issued a check to Isserlis from its escrow account for $21,000, representing Isserlis's 70% share of the $30,000. The word "settlement" was typed on the MEMO line of the check. LMB also issued a check to itself for $9,000, constituting LMB's 30% share of the $30,000. The words "N. Isserlis Settlement" were typed on the MEMO line of the check.

On August 25, 2008, within ninety days of the $80,000 and $30,000 Transfers, RPC and RPNY filed for protection under Chapter 11 of the Bankruptcy Code. On January 19, 2010 the Debtors' cases were converted to Chapter 7 and on September 8, 2010, they were substantively consolidated.

On April 21, 2010, the Trustee commenced the instant adversary proceeding against Isserlis and LMB seeking to:

(A) avoid and recover the $56,000 and $21,000 payments from RPNY to Isserlis, (i) as preferences pursuant to sections 547(b) and 550 of the Bankruptcy Code, and (ii) as constructive fraudulent conveyances pursuant to sections 548(b), 544(b) and 550 of the Bankruptcy Code, and sections 273 and 274 of the New York Debtor and Creditor Law[2], and

(B) avoid and recover the $24,000 and $9,000 payments from RPNY to LMB, (x) as preferences under sections 547(b) and 550 of the Bankruptcy Code, and (y) as constructive fraudulent transfers under sections 548(a)(1)(B), 544(b) and 550 of the Bankruptcy Code, and sections 273 and 274 of the New York Debtor and Creditor Law.

On May 24, 2010, LMB answered the Complaint, and asserted ten affirmative defenses.

---

[2]        As previously mentioned in this Decision, the fraudulent conveyance claims have been waived.

LMB argues that the Trustee has not proven the elements of a preference under section 547(b), and that even if the Transfers are avoidable under section 547(b), LMB is not an "initial transferee" under section 550 of the Bankruptcy Code.  Rather, LMB argues that it is a subsequent transferee of the initial transfer to Isserlis and that it took in good faith, for value and without knowledge of the voidability of the Transfers.[3]

### *The Preference Claims*

The Trustee asserts that the Transfers from RPNY to LMB pursuant to the Settlement Agreement and/or the Stipulation and Judgment are avoidable preferences under section 547 of the Bankruptcy Code.  To succeed on a preference claim under section 547, the Trustee must prove that the subject Transfers (1) were made "to or for the benefit of a creditor," (2) "for or on account of an antecedent debt," (3) "while the debtor was insolvent," (4) "on or within 90 days of the filing of the petition," and (5) that the Transfers enabled the creditor to "receive more than such creditor would receive if the case was under chapter 7." 11 U.S.C. § 547(b).

First, the Trustee must prove that the Transfers were made to or for the benefit of a "creditor" of the Debtors.  The Trustee argues that LMB is a creditor because LMB was a party to the Settlement Agreement.  The Trustee asserts that it is irrelevant that LMB's right to the 30% of the settlement funds stemmed from LMB's representation of Isserlis and cites *Phoenix Rest. Grp. v. Fuller, Fuller & Assocs. (In re Phoenix Rest. Grp.)*, 316 B.R. 671, 675 (Bankr.

---

[3]     On June 10, 2010, Isserlis filed an answer to the complaint including a number of affirmative defenses, and a cross claim against LMB for malpractice in failing to obtain a security interest for the payment of RPC's obligations under the Settlement Agreement and Stipulation.  Pursuant to a motion by Isserlis, the legal malpractice cross claims were transferred to the District Court for the Eastern District of New York.

M.D. Tenn. 2004), in support of this argument.  LMB argues that it is not a "creditor" of RPNY

or the Debtors and asserts LMB acted solely as counsel to Isserlis, and that the initial transfers to

LMB were received for the benefit of its client, Isserlis, and not LMB itself.  LMB further argues

that neither RPC nor RPNY was obligated to pay LMB's fees, and therefore LMB has and had

no claim against the Debtors and cannot be considered a "creditor."

Under section 101(10) of the Bankruptcy Code the term "creditor" is defined as an

"entity that has a claim against the debtor that arose at the time of or before the order for relief

concerning the debtor."  11 U.S.C. § 101(10).  The term "claim" simply means the right to

payment.  11 U.S.C. § 101(5).  RPC's obligation in this matter arose from the Settlement

Agreement and the subsequent Stipulation and Judgment.  The Settlement Agreement states that

it was "entered into by and between Nancy Isserlis ("Isserlis") and the Robert Plan Corporation

("RPC" or the "Company") (Collectively the "Parties")."  (Settlement Agreement ¶1).  The

Settlement Agreement makes no mention of LMB as a party to the agreement.  The Settlement

Agreement states that "Isserlis will receive the following *gross payments* . . . and it being

understood that 30% of each payment will be paid directly by check to Leeds Morelli & Brown,

P.C. ("Isserlis' Counsel") *as attorneys fees*." (*Id.* ¶ 5 (emphasis added)).

Based on the plain language of the Settlement Agreement, Isserlis would receive the

"gross payments" from RPC, with LMB receiving a portion of the payment in satisfaction of the

fees owed to it by Isserlis.  The Settlement Agreement therefore, establishes Isserlis, not LMB,

as a "creditor" of RPC on account of the debt arising from the settlement.  LMB had no separate

collection rights as against RPC arising out of the Settlement Agreement.

The Stipulation is further evidence that LMB is not a "creditor" of RPC.  The Stipulation

does not make any reference to direct payments to LMB, but rather incorporates the payment

distribution from the Settlement Agreement.  (Stipulation ¶ 3).  The Stipulation sets forth a schedule of payments that "will be made *to Ms. Isserlis*" and does not mention any obligation on the part of RPC to make direct and separate payments to LMB.  (*Id.* ¶5 (emphasis added)).  In addition, both the Settlement Agreement and the Stipulation are signed by LMB "as attorneys" for Isserlis, not in its own capacity as a party to the agreement.  (*Id.* at 3; Settlement Agreement, at 10).  In addition, the Judgment entered by the state court grants Isserlis alone the right of repayment.

Although LMB represented Isserlis in the State Court Action, the underlying claim was Isserlis's.  The only interest LMB had in the State Court Action was for contingency fees owed by Isserlis to LMB stemming from the firm's representation of her.  At no point did LMB have a direct right to payment from RPC, and therefore LMB never became a creditor of RPC.

For these reasons, the Court finds that the Settlement Agreement, Stipulation and resulting Judgment granted Isserlis alone the right to receive payments from RPC, and thus she is the "creditor" for purposes of this section 547 analysis.  As the Court will discuss in detail in the context of its analysis of recovery under section 550 of the Bankruptcy Code, the Transfers in this case, despite being deposited into LMB's escrow account, are deemed to have been made directly "to" Isserlis, the creditor herein.  It was for Isserlis's benefit that LMB received the funds into its escrow account.  LMB did not have dominion and control over the funds in its escrow account, but rather was a "mere conduit" of the funds.

Second, the Trustee must prove that the Transfers were made "on account of an antecedent debt owed by the debtor before the transfer was made."  11 U.S.C. § 547(b)(2).  The Trustee argues that Transfers were made subsequent to and on account of an antecedent debt in that the genesis of the RPC's obligation was the execution of the Stipulation and the entry of the

Judgment.  In its defense, LMB argues that RPC was never obligated to pay its legal fees and the payments it received were fees due from Isserlis and not "on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).  The Court has found that the "creditor" in this case is Isserlis, and the payments were made "to" Isserlis by way of LMB's escrow account.  The Court therefore finds that this element of the statute is satisfied in that the payments from RPC were made on account of the antecedent debt owed to Isserlis by RPC as set forth in the Settlement Agreement, Stipulation and Judgment.

Third, the Trustee must prove that the Transfers were made while RPC was insolvent. The Trustee argues that RPC was insolvent based on the testimony of RPC's former Senior Vice President and Chief Operating Officer, Philbert Nezamoodeen.  Nezamoodeen testified that in the months leading up to RPC filing for bankruptcy protection, RPC did not have sufficient funds to pay employees, rent, or utilities.  Nezamoodeen also testified that prior to the bankruptcy filing, RPC's liabilities far exceeded its assets and therefore it was insolvent.  LMB argues that the Trustee failed to make a sufficient showing that the Debtors were insolvent at the time of the Transfers because Nezamoodeen's testimony was conclusory and not supported by evidence.

Under section 101(32)(A) of the Bankruptcy Code the term "insolvent" is defined as the "financial condition such that the sum of the entity's debts is greater than all of such entity's property, at a fair valuation . ..."  11 U.S.C. § 101(32)(A).  For purposes of section 547 avoidance of transfers, a "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."  11 U.S.C. § 547(f).  In addition to this presumption, the Trustee sought to establish RPC's insolvency through Nezamoodeen's testimony and a sworn affidavit.  Nezamoodeen testified that in the months leading up to the

filing of the petition, RPC was unable to pay employee salaries, office rent, or office utilities. (Affidavit of Philbert Nezamoodeen ¶7-11; Dec. 16, 2010 Tr. at 124-25). He also testified that prior to the filing of the bankruptcy petition the total assets of RPC were $21,874,000 while the total liabilities were $41,056,000. (Dec. 16, 2010 Tr. at 128 - 29). LMB argues that the Debtors' own schedules prove that they were solvent on the date of the bankruptcy filing because their reported assets exceeded their liabilities. However, the Debtors' schedules included an $80,000,000 contingent asset, namely a potential claim against AIG Insurance Co., and its affiliates. The Court finds that the inclusion of this contingent asset at anything close to full value was misleading and did not present an accurate depiction of the Debtors' financial condition. This finding is underscored by the fact that during the pendency of this bankruptcy proceeding, the Debtor's claims against AIG were settled for a small fraction of the value ascribed to the contingent asset in the schedules.

Because there is a statutory presumption of insolvency, and based on the testimony that RPC could not pay its debts as a going concern during the months when the Transfers were made, and that RPC's liabilities greatly exceeded its assets, the Court finds that the Trustee has met its burden of establishing that RPC was insolvent at the time of the Transfers. *See In re Roblin Indus. Inc.*, 78 F.3d 30, 35-36 (2d Cir. 1996) ("The Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency.").

Fourth, the Trustee must prove that the Transfers occurred within 90 days before the date of the filing of the petition for bankruptcy relief. The Transfers took place on or around July 18, 2008 and August 4, 2008, and the bankruptcy petition was filed on August 25, 2008. There is no dispute that the Transfers took place within 90 days before the filing of the bankruptcy petition and the Court finds that this element of the statute is satisfied.

Fifth, the Trustee must prove that the creditor who received the Transfers, or for whose benefit the Transfers were made, received more than it would have "if the case were under Chapter 7 . . . [and] the transfer had not been made."  11 U.S.C. § 547(b)(5).  The Trustee argues that based on his administration of the estate, there will not be sufficient assets in the estate to satisfy a secured claim filed by New York State for over three million dollars, and unsecured creditors are not likely to receive any distribution.  Therefore, the Trustee argues that any payment to LMB, an unsecured creditor, would be more than LMB would receive in the chapter 7 liquidation.  In its defense, LMB asserts that because it is not a creditor of RPC, section 547(b)(5) does not apply as against LMB and has not been proven by the Trustee.

Again, the Court has found that the "creditor" in this case is Isserlis, not LMB, and thus the analysis must be whether the Transfers enabled Isserlis to receive more than she would have received in this chapter 7 liquidation.  Based on the evidence presented and the proceedings in the consolidated bankruptcy cases, the Court finds that the Transfers enabled Isserlis to receive more than she otherwise would have in the chapter 7 liquidation.  New York State has a secured claim against RPC of three million dollars which will not likely be paid in full.  As a result, unsecured creditors, including Isserlis, are not likely to receive any payment from the Debtors' bankruptcy estate.  Therefore, as a result of the Transfers Isserlis received more than she would have in a chapter 7 liquidation.

The Trustee has therefore met his burden in establishing the elements of an avoidable preference and the Transfers are subject to avoidance under section 547(b).[4]

---

[4]       LMB also argues that even if the elements of section 547(b) are met, the Transfers cannot be avoided because of the exception under section 547(c)(6) which states that the trustee may not avoid a transfer "that is the fixing of a statutory lien that is not avoidable under section 545" of the Bankruptcy Code.  *See* 11 U.S.C. § 547(c)(6).  LMB argues RPNY's transfer of funds to Isserlis gave rise to a judiciary charging lien in LMB's favor, pursuant to section 475 of the New

## *Recovery for the Benefit of the Estate – Section 550*

Having found that the Transfers are avoidable preferences under section 547 the Court must now determine whether the value of the Transfers can be recovered from LMB.  In order to recover the value of the Transfers from LMB, the Trustee must prove that LMB is an "initial transferee" under section 550(a)(1), or an "immediate or mediate transferee" of the initial transferee under section 550(a)(2).  The Trustee asserts that LMB is an "initial transferee" under section 550(a)(1) because LMB received an aggregate of $33,000 from RPC under the Settlement Agreement and Stipulation.  The Trustee relies on a number of cases, including, *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228 (8th Cir. 1993), *Lawless v. Eastern Milk Producers Coop. (In re Stop-N-Go of Elmira, Inc.)*, 30 B.R. 721 (Bankr. W.D.N.Y. 1983), and *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47 (Bankr. S.D.N.Y. 2010), to support his argument that LMB is an initial transferee notwithstanding the fact that it received the funds through an escrow account.

In its defense, LMB argues that the Trustee cannot recover the value of the Transfers from LMB because LMB is not an initial transferee, and if LMB is a mediate or immediate transferee, it has the defense that it took the funds for value, in good faith, and without knowledge of the avoidability of the transfer.  *See* 11 U.S.C. § 550.  LMB argues that Isserlis is the initial transferee of the funds, and it was merely a conduit for the funds that were deposited

---

York Judiciary Law.  The Trustee argues that LMB's charging lien never attached to the transferred funds because those funds constituted avoidable preferences and as such there was no fund to which LMB's charging lien attached.  This, the Trustee argues, defeats LMB's security interest in the funds.  The Court finds that it is not necessary to decide this issue as a result of the Court's finding that the transfers cannot be recovered from LMB under section 550.

into its escrow account.

Section 550 allows a trustee to recover avoided transfers from the initial transferee, or the immediate and mediate transferees of the initial transferee.  11 U.S.C. § 550(a).  However, section 550 limits the extent to which the Trustee can recover property from an immediate or mediate transferee.  A trustee cannot recover from an immediate or mediate transferee who takes the property for value, in good faith, and without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b).

Although an "initial transferee" is not defined by the Bankruptcy Code, the Second Circuit has held that an initial transferee is one that has "dominion over the money or other asset," and "the right to put the money to one's own purpose."  *Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-58 (2d. Cir. 1997) (adopting the "mere conduit test" in the Second Circuit).  A "mere conduit" of transferred funds is not considered to be an "initial transferee" because it has no dominion or control over the property, but rather is a party with actual or constructive possession of the asset before transferring it to another person.  *See id.*; *Authentic Fitness Corp. v. Dobbs Temp. Help Servs. (In re Warnaco Grp.)*, No. 01 B 41643(RLB), 2006 WL 278152, at *6 (Bankr. S.D.N.Y. Feb. 2, 2006).  Conduits can do no more than to transmit the transferred property received to another party.  *In re Warnaco Grp.*, 2006 WL 278152, at *6.

In a case similar to the matter before the Court, in *Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334, 336-37 (Bankr. S.D.N.Y. 1983), the trustee attempted to avoid as a preference, payments to a law firm for the settlement of a claim for one of the firm's clients.  The settlement payments were paid to the law firm, which deposited the payments in an

escrow account, and then issued checks to the client from the escrow account. *Id.* The court held that the payments to the law firm could not be recovered from the firm, as the firm was not an initial transferee. *Id.* Rather, the firm was a mere conduit of the funds, transferring the funds from the debtor to the creditor. The court stated that an initial transferee is one who deals directly with the debtor. In that case, the client of the law firm, and not the law firm itself, dealt directly with the debtor, giving rise to the debt and the eventual law suit. Therefore, the mere fact that the money passed through the law firm's escrow account did not make the law firm an initial transferee. *Id.* at 337.

The holding of *Gropper* applies to this case as well. The Court finds that when LMB received the Transfers from RPNY LMB was acting as a mere conduit of the Transfers from RPNY to Isserlis. The facts established at trial show that LMB acted as an escrow agent for the settlement funds transferred from RPNY and that LMB did not transfer the funds to Isserlis or its own operating account until it was given direction to do so by Isserlis. Jeffrey K. Brown, a partner at LMB, testified that it was the ordinary business practice of LMB to place settlement or other awards from contingency fee cases in an escrow account, separate from the firm's general accounts, and deduct the attorney's fees from the award, pursuant to the retainer agreement signed by the client. He further testified that LMB did not have discretion to exercise dominion and control over the funds in its escrow account absent the client's direction. Finally, Mr. Brown testified at trial that Isserlis specifically directed LMB to receive the payments in the escrow account for her benefit and release the fund at her direction. (Dec. 16, 2010 Tr. at 40, 53).

The Court finds that LMB did not exercise dominion over the funds and did not have the right to use the funds for its own benefit. The only direction LMB received was to place the

money transferred from RPNY into the escrow account of the firm, deduct the agreed upon fees, and transfer the balance to Isserlis.  *See In re Warnaco Grp.*, 2006 WL 278152, at *7 (stating that an entity is not an initial transferee where it has no choice but to transfer money to another party).

LMB's conduct and the Court's characterization of its role in the transfer of the settlement funds from RPNY to Isserlis, is entirely consistent with New York law.  Under New York law, an escrow agent has a "contractual duty to follow the escrow agreement, [and] additionally becomes a trustee of anyone with a beneficial interest in the trust . . . with the 'duty not to deliver the escrow to anyone except upon strict compliance with the conditions imposed.'" *Takayama v. Schaefer*, 240 A.D.2d 21, 25 (N.Y. App. Div. 1998) (internal citations omitted); *see Great Am. Ins. Co. v. Canandaigua Nat'l Bank & Trust Co.*, 23 AD.3d 1025, 1027 (N.Y. App. Div. 2005) (stating that in an escrow agreement "the funds are to be delivered to a third party conditioned upon the performance of some act or the occurrence of some event.").  In addition, in New York, any "lawyer in possession of any funds . . . belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds . . . or commingle such funds . . . with his or her own."  Rules of Prof'l Conduct R. 1.115 (McKinney 2009) (emphasis added).  Failure of an attorney to comply with his fiduciary duties as an escrow agent, and duties under the code of ethics, can result in the disbarment or suspension of the lawyer.  *See In re Katz*, 61 A.D.3d 213, 217 (N.Y. App. Div. 2009); *In re Kirschenbaum*, 29 A.D.3d 96, 103 (N.Y. App. Div. 2006).  Therefore, under New York law, the nature of an escrow account requires the escrow agent to hold the funds for the benefit of the client and the escrow agent is precluded from accessing those funds for its own use without the direction of the client.

The Court finds that LMB did not exercise dominion and control over the payments from RPNY, and finds that Isserlis, not LMB, was the "initial transferee" of the funds received from RPNY.[5]  However, when the settlement funds were subsequently transferred from the escrow account to LMB's operating account, LMB became an immediate or mediate transferee of the initial transfer.  Section 550 allows for recovery not just from an initial transferee, but from an immediate or mediate transferee as well.  11 U.S.C. § 550(a)(2).  The ability to recover avoided transfers from an immediate or mediate transferee, however, is subject to statutory limitations.  Under section 550(b)(1) a transfer cannot be recovered from an immediate or mediate transferee where the transferee "takes for value, including in satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b)(1).

The Trustee argues that LMB cannot avail itself of the good faith defense because LMB had knowledge of the voidability of the Transfers.  While the Trustee is correct in asserting that knowledge of voidability does not require "complete understanding of the facts and receipt of a lawyer's opinion that such transfer is voidable; some lesser knowledge will do," *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 898 (7th Cir. 1988), that "lesser knowledge" has not been met in this case.  There is no evidence that LMB was aware that the Transfers were subject to avoidance.  At trial, Mr. Brown stated that he had heard conflicting rumors that "things were booming" at RPC, yet there was a "big issue" with a potential lawsuit with AIG. (Dec. 16, 2010 Tr. at 59–60).  The Court finds that these conflicting rumors do not rise to the level of knowledge of the voidability of the Transfers.  *See In re Parklex Assocs.*, 435 B.R. 195, 212

---

[5]     As previously mentioned, the Trustee has settled his claims against Isserlis for $70,000 and has forfeited the right to collect the balance of the preferential payments from her.

(Bankr. S.D.N.Y. 2010) (citing *Wasserman v. Bressman* (*In re Bressman*)*,* 327 F.3d 229, 236 (3d. Cir. 2003)) (stating that the proper inquiry for knowledge of voidability of the transfer is whether the transferee possessed knowledge of facts that suggest the transfer may be fraudulent).

In addition to lacking knowledge of the potential avoidability of the Transfers, LMB also took the Transfers for value.  When LMB transferred the subject funds from its escrow account to its operating account it was to satisfy Isserlis's obligation to compensate LMB for its representation of her in the State Court Action.  Thus, LMB took the transfer from Isserlis for value.  *See Wasserman v. Bressman,* 327 F.3d at 235-36 (finding that where a law firm receives money in satisfaction for completed work, the firm "takes for value").  In addition, LMB had a statutory charging lien on the settlement proceeds pursuant to section 475 of the New York Judiciary Law which further validates its entitlement to receive the subject funds.

Finally, there is no indication that LMB did not act in good faith when it transferred the funds from its escrow account to its operating account in satisfaction of its fee arrangement with Isserlis.  *See First Independence Capital Corp. v. Merrill Lynch Bus. Fin. Servs. (In re First Independence Capital Corp.)*, 181 F. App'x 524, 528 (6th Cir. 2006) (referencing multiple definitions of good faith, but holding that good faith existed where there was no "egregious, vindictive or intentional misconduct").

Therefore, the Trustee cannot recover the Transfers from LMB as an initial transferee or as an immediate or mediate transferee.

### *Conclusion*

For all of the foregoing reasons, the Court finds that the subject Transfers are subject to avoidance pursuant to section 547 of the Bankruptcy.  The Court further finds that the avoided

Transfers may not be recovered from LMB pursuant to section 550 of the Bankruptcy Code.

Dated:  Central Islip, New York
        May 5, 2011

                                    */s/ Robert E. Grossman*
                                    Robert E. Grossman
                                    United States Bankruptcy Judge